BATES ASSOCIATES, LLC v 132 ASSOCIATES, LLC

Docket No. 288826. Submitted May 12, 2010, at Detroit. Decided September 14, 2010, at 9:15 a.m.

Bates Associates, L.L.C., brought an action in the Wayne Circuit Court against 132 Associates, L.L.C., and the Sault Ste. Marie Tribe of Chippewa Indians, alleging that they breached a settlement agreement that the parties had reached following a dispute over the sale of a parking garage. The settlement agreement incorporated by reference a waiver of sovereign immunity and tribal-court jurisdiction by the tribe that was included in the original sale agreement and also contained a choice-of-law provision indicating that the agreement would be governed by Michigan law. The court, John H. Gillis, Jr., J., entered a preliminary injunction that required defendants to transfer title to the garage to plaintiff. Defendants filed a counterclaim alleging that they had transferred title to the garage, but plaintiff owed them $91,619.28. Plaintiff and defendants both moved for summary disposition. Defendants contended that the tribe's chief financial officer had lacked the authority to enter into the settlement agreement and that the waivers of the tribe's sovereign immunity and tribal-court jurisdiction in the agreement were invalid. The court disagreed and granted summary disposition in favor of plaintiff. Defendants appealed.

The Court of Appeals *held*:

1. The trial court correctly granted summary disposition in plaintiff's favor. An Indian tribe is subject to suit only if Congress has authorized the suit or the tribe has clearly and unequivocally waived its sovereign immunity. The settlement agreement at issue in this case incorporated the tribe's waivers of sovereign immunity and tribal-court jurisdiction set forth in the sale agreement. Because these waivers were clear and unequivocal, they were enforceable.

2. While the tribe argued that the waivers of sovereign immunity and tribal-court jurisdiction were invalid because they were not supported by a resolution of the tribe's board of directors as required by the tribe's code, that argument failed under the facts of the case. The chief financial officer had the authority to enter into the settlement agreement, there was no indication that plaintiff was aware that a tribal resolution was necessary for the

tribe to waive sovereign immunity and tribal-court jurisdiction, and the tribe initially acted as if the settlement agreement were valid. Further, the settlement agreement incorporated by reference the clear and unequivocal waivers set forth in the sale agreement and the tribe conceded that the agreement of sale was authorized by a valid tribal resolution.

Affirmed.

1. INDIANS — SOVEREIGN IMMUNITY — WAIVERS — CLEAR AND UNEQUIVOCAL WAIVERS.

An Indian tribe is subject to suit only if Congress has authorized the suit or the tribe has clearly and unequivocally waived its sovereign immunity.

2. INDIANS — TRIBAL-COURT JURISDICTION — WAIVERS — EXPLICIT WAIVERS — CHOICE-OF-LAW PROVISIONS.

The inclusion of a choice-of-law provision in a contract to which an Indian tribe is a party may explicitly waive tribal-court-jurisdiction.

*Barris, Sott, Denn, & Driker, P.L.L.C.* (by *Morley Witus, James S. Fontichiaro,* and *Jeffrey M. Stefan*), for plaintiff.

*Abbott Nicholson, P.C.* (by *George M. Malis, Gene J. Esshaki,* and *Christopher R. Gura*), for defendants.

Before: SAAD, P.J., and HOEKSTRA and SERVITTO, JJ.

SAAD, P.J. Defendants, 132 Associates, L.L.C., and the Sault Ste. Marie Tribe of Chippewa Indians (the Tribe), appeal the trial court's grant of summary disposition to plaintiff, Bates Associates, L.L.C. Though both defendants filed a claim of appeal, only the Tribe challenges the trial court's judgment against it. For the reasons set forth in this opinion, we affirm.

I. FACTS

This dispute arises from the purchase of a parking garage located near the Greektown Casino in Detroit.

The Tribe is a federally recognized Indian tribal government that owned 132 Associates and Greektown Casino, L.L.C. In 2000, the casino sought a license from the Michigan Gaming Control Board to begin operations, but it lacked adequate parking. To remedy the problem, Bates agreed to assign to defendants its right to purchase a parking garage near the casino. In conjunction with this assignment, defendants agreed to make significant repairs to the garage and to give Bates an option to purchase the garage for $1 at any time within seven years after the execution of the agreement.

Bates exercised its option to purchase the garage, but title to the garage was not delivered within the seven-year option period, and the parties disputed the extent of repairs needed to render the garage in good condition. Ultimately, the parties reached a settlement agreement requiring that title to the garage be delivered to Bates and requiring 132 Associates to pay Bates a total of $2,250,000 in four installments. After defendants failed to make their installment payments and refused to turn over title to the garage, Bates filed suit, alleging breach of the settlement agreement and requesting an order requiring defendants to transfer title to the garage. The trial court entered a preliminary injunction that required defendants to transfer title to Bates by June 13, 2008. On June 23, 2008, defendants filed a counterclaim, alleging that they had transferred title to the garage to Bates, but Bates owed them $91,619.28, which it refused to pay.

Bates and defendants filed motions for summary disposition. Defendants contended that the Tribe's chief financial officer (CFO), Victor Matson, lacked authority to enter into the settlement agreement and that the waiver of sovereign immunity in the settlement

agreement was invalid. The trial court disagreed and granted summary disposition to Bates.

II. ANALYSIS[1]

The parties' settlement agreement specifically incorporated the waiver of sovereign immunity provided in § 10 of their sale agreement. The settlement agreement stated, in relevant part:

> The Tribe's waiver of sovereign immunity as provided in Section 10 of the Agreement of Sale attached to the Option Agreement dated November 3, 2000 is incorporated herein by reference with regard to any action or proceeding by Bates to enforce its rights relating to relating to [sic] this Settlement Agreement, the Tribe's guaranty, the parties' agreements, and/or Bates Garage.

Section 10 of the sale agreement provided:

> Waiver of Immunity The Seller and the Tribe (in connection with aforemented [sic] guaranty the Tribe) hereby expressly waive their sovereign immunity from suit should an action be commenced with respect to this Agreement or any document executed in connection with this Agreement of Sale. This waiver (i) is granted to Purchaser, its successor and assigns; (ii) shall be enforceable in [a] court of competent jurisdiction; and (iii) the governing law shall be the internal laws of the State of Michigan. The Seller and Tribe hereby expressly submit to and consent to the

---

[1] We review de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition under MCR 2.116(C)(10) is properly granted if no factual dispute exists, thus entitling the moving party to judgment as a matter of law. *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 31; 651 NW2d 188 (2002). In deciding a motion brought under subrule (C)(10), a court considers all the evidence, affidavits, pleadings, and admissions in the light most favorable to the nonmoving party. *Id.* at 30-31. The nonmoving party must present more than mere allegations to establish a genuine issue of material fact for resolution at trial. *Id.* at 31.

jurisdiction of the Federal District Court for the Eastern District of Michigan (including all federal courts to which decisions of the Federal District Court for the Eastern District of Michigan may be appealed), and the courts of the State of Michigan (including all courts to which decisions of the original jurisdiction courts of the State of Michigan may be appealed). In the event a suit is commenced, the Seller and Tribe covenant that they will not dispute the jurisdiction of the United States District Court for the Eastern District of Michigan and all federal courts to which decisions of the United States District Court for the Eastern District of Michigan may be appealed, and to the jurisdiction of the courts of the State of Michigan, and all courts to which decisions of the original jurisdiction courts of the State of Michigan may be appealed. Seller and Tribe further covenant that if a suit is commenced on or regarding the subject matter of this Agreement, it will stipulate and consent to the jurisdiction of the federal courts or State of Michigan courts, as described above.

Thus, the settlement agreement incorporated the Tribe's waiver of sovereign immunity set forth in the sale agreement, and this waiver specifically provided that it was enforceable in a court of competent jurisdiction and that laws of the state of Michigan would govern.

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v Mfg Technologies, Inc*, 523 US 751, 754; 118 S Ct 1700; 140 L Ed 2d 981 (1998). This immunity applies to a tribe's commercial contracts, whether made on or off of an Indian reservation. *Id.* at 760. "[T]o relinquish its immunity, a tribe's waiver must be 'clear.' " *C & L Enterprises, Inc v Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 US 411, 418; 121 S Ct 1589; 149 L Ed 2d 623 (2001), quoting *Oklahoma Tax Comm v Citizen Band*

*Potawatomi Indian Tribe of Oklahoma*, 498 US 505, 509; 111 S Ct 905; 112 L Ed 2d 1112 (1991). Likewise, a waiver cannot be implied and must be unequivocally expressed. *Santa Clara Pueblo v Martinez*, 436 US 49, 58; 98 S Ct 1670; 56 L Ed 2d 106 (1978).

In *C & L Enterprises*, 532 US at 423, the Court ruled that the respondent Indian tribe had waived its immunity from suit by expressly agreeing to arbitrate disputes with the petitioner, C & L Enterprises, Inc., and by agreeing that Oklahoma law would govern such disputes. The tribe contracted with C & L for the installation of a roof on a building that the tribe owned. *Id.* at 414. The parties' contract was a standard form agreement requiring that all disputes arising out of or relating to the contract be resolved by arbitration. The contract also contained a clause stating that the contract would be governed by the law applicable in the place where the project was located. Under Oklahoma's Uniform Arbitration Act, agreements providing for arbitration in the state of Oklahoma conferred jurisdiction on any court of competent jurisdiction in the state. *Id.* at 415-416. Ultimately, an arbitrator rendered an award in C & L's favor, and C & L filed suit to enforce the award in an Oklahoma state court of general jurisdiction. *Id.* at 416. The tribe sought dismissal of the suit on the basis of its sovereign immunity, and an appellate court determined that the tribe had not waived its immunity with the requisite clarity. *Id.* at 416-417.

The United States Supreme Court disagreed. The Court held that the contract's arbitration provision required arbitration of all disputes related to the contract and that the contract's choice-of-law clause made it clear that the Oklahoma court in which C & L filed suit was a " 'court having jurisdiction' " to enforce the

arbitrator's award. *Id.* at 418-419. The Court stated that, by selecting Oklahoma law, the parties "effectively consented to confirmation of the award 'in accordance with' the Oklahoma Uniform Arbitration Act[.]" *Id.* at 419. The Court recognized that the tribe agreed by express contract to adhere to the dispute resolution procedures outlined in the contract. *Id.* at 420. The Court acknowledged that there was no requirement that a waiver contain the words "sovereign immunity" to be considered explicit rather than implicit. *Id.* at 420-421. Further, in response to the tribe's argument that the form contract designed for private parties without immunity could not have established a valid waiver of its tribal immunity, the Court determined that the contract was not ambiguous and recognized that the tribe itself had proposed the contract. The Court thus held that the tribe had clearly consented to arbitration and to the enforcement of the arbitrator's award in an Oklahoma state court. Accordingly, the Court concluded that the tribe had waived its sovereign immunity.[2] *Id.* at 423.

Because the settlement agreement here incorporated the Tribe's waiver of sovereign immunity set forth in the sale agreement and the waiver unequivocally provided that it was enforceable in a court of competent jurisdiction and that laws of the state of Michigan would govern, the waiver is similar to that in *C & L Enterprises,* which stated that Oklahoma law would govern the dispute and that jurisdiction was proper in any court of competent jurisdiction in the state of Oklahoma. Moreover, the waiver in this case is clearer

---

[2] See also *Oglala Sioux Tribe v C & W Enterprises, Inc,* 542 F3d 224, 231 (CA 8, 2008) (holding that the Indian tribe waived its sovereign immunity with respect to three contracts that contained agreements to arbitrate as well as other explicit waivers of sovereign immunity).

and more explicit than that in *C & L Enterprises* because the waiver in that case was simply an arbitration clause contained in a form agreement. In this case, neither the settlement agreement nor the sale agreement was a form agreement, and the waiver was clear and unequivocal. Further, ¶ 11 of the settlement agreement contained additional language stating that the agreement "shall be governed by and interpreted in accordance with the laws of the State of Michigan." As in *C & L Enterprises*, this choice-of-law provision explicitly waived tribal-court jurisdiction. Therefore, because the waivers of sovereign immunity and tribal-court jurisdiction were clearly and unambiguously expressed, they are enforceable. *C & L Enterprises*, 532 US at 418; *Santa Clara Pueblo*, 436 US at 58.

The Tribe argues that the purported waivers of sovereign immunity and tribal-court jurisdiction in the settlement agreement are invalid because they were not supported by a resolution of the Tribe's board of directors as required under § 44.105 and § 44.109 of the Tribe's code. We note that the United States Supreme Court has not addressed this issue and has not required anything other than clear, unequivocal language for a valid waiver. See *C & L Enterprises*, 532 US at 418; *Santa Clara Pueblo*, 436 US at 58. The Tribe argues, however, that *Memphis Biofuels, LLC v Chickasaw Nation Indus, Inc*, 585 F3d 917 (CA 6, 2009), compels reversal of the trial court's decision. We are not bound by decisions of the United States Court of Appeals for the Sixth Circuit, *State Treasurer v Sprague*, 284 Mich App 235, 241-242; 772 NW2d 452 (2009), and we are not persuaded that *Memphis Biofuels* warrants reversal.

*Memphis Biofuels* involved the plaintiff, Memphis Biofuels, L.L.C. (MBF), and Chickasaw Nation Industries, Inc. (CNI), a corporation wholly owned by the

Chickasaw Nation Indian tribe but an entity separate and distinct from the tribe. In 2006, MBF and CNI entered into a contract whereby CNI would deliver fuel and soybean oil to MBF for refinement and resale. During contract negotiations, MBF insisted on a contractual provision stating that CNI waived any sovereign immunity and that its waiver was valid, enforceable, and effective. *Memphis Biofuels*, 585 F3d at 918. The parties exchanged draft versions of the agreement, and one of the drafts that CNI's attorneys reviewed and approved contained two comments indicating that CNI board approval was necessary to waive immunity. *Id.* at 918-919. Ultimately, however, the parties signed the agreement without obtaining board approval. *Id.* at 919. Notably, CNI's charter required board approval in order to waive sovereign immunity. *Id.* at 921. After CNI repudiated the agreement, both parties commenced legal action. *Id.* at 919.

The Sixth Circuit acknowledged that although no resolution had been passed, both parties signed a waiver provision waiving all immunities. *Id.* at 922. The Sixth Circuit also acknowledged that MBI believed that CNI had obtained the required approval for its waiver. Nonetheless, the court held that CNI's charter controlled and that CNI's sovereign immunity remained intact without board approval waiving such immunity. *Id.*

A different result was reached in *Smith v Hopland Band of Pomo Indians*, 95 Cal App 4th 1; 115 Cal Rptr 2d 455 (2002). In that case, Smith, an architect, entered into two contracts with the defendant tribe to provide planning and architectural services. *Id.* at 3. The contracts included the American Institute of Architects standard form agreement requiring arbitration of disputes and enforcement of arbitration awards in any

court having jurisdiction. *Id.* After Smith filed suit, the tribe argued that either a duly enacted tribal ordinance or a resolution of the tribal council was required to waive the tribe's sovereign immunity. *Id.* at 4-5. Ultimately, the trial court dismissed the action on this basis. *Id.* at 5.

On appeal, the court opined that the contractual language was indistinguishable from that in *C & L Enterprises*, and that the only reasonable interpretation of the terms was that they clearly and explicitly waived sovereign immunity. *Id.* at 6. In addressing the tribe's argument that the chairperson did not have actual authority to waive sovereign immunity absent an ordinance or resolution explicitly providing for such a waiver, the court recognized that the tribe did not dispute that the chairperson had the authority to negotiate the contracts and execute the final versions that incorporated the arbitration clause and choice-of-law provision. *Id.* at 7. The court also recognized that the tribe subsequently approved the contracts by resolution and that Smith gave all members of the tribal council copies of the contracts at a meeting during which the council authorized the chairperson to negotiate and execute the contracts. *Id.* at 7-8. The court further recognized that Smith and the tribal council negotiated the contracts during a subsequent meeting and modified the contractual terms. Thus, the court held that the tribal council was fully aware of the contractual terms and was not presented with a situation in which a tribal agent signed a contract without authority to act on the tribe's behalf. *Id.* at 8. Thus, the court determined that the tribe had waived its sovereign immunity. *Id.* at 12.

The court rejected the tribe's argument that the effect of the sovereign-immunity ordinance was to require the enactment of an ordinance or resolution

specifically waiving sovereign immunity notwithstanding that the tribe had authorized one of its officials to execute the contracts and notwithstanding the tribe's subsequent approval of the contracts. *Id.* at 9. The court stated that the tribe's argument assumed that the court must apply the tribal sovereign-immunity ordinance to determine that the otherwise binding contracts were ineffective to waive sovereign immunity because the explicit waiver was made by contract rather than by ordinance or resolution. *Id.* In rejecting that argument, the court reiterated many of the reasons previously discussed, but also ruled that federal law rather than tribal law was applicable to resolve this question and that, if the court did not refer to federal law, it would not apply tribal law because the contracts specified that they were to be governed by California law. *Id.* at 10. The court thus determined that the tribe, through its chairperson and subsequent resolution by the tribal council, had executed contracts that clearly and explicitly waived the tribe's sovereign immunity. *Id.* at 12.

The facts of this case warrant a result similar to that in *Smith*. Victor Matson, as the Tribe's CFO, clearly had authority to enter into the settlement agreement, as demonstrated by the fact that he was the same person who signed the deed when title to the garage was transferred to Bates pursuant to the preliminary injunctive order compelling the transfer. Both the Tribe and Bates made changes to the settlement agreement during negotiations, and the waiver provisions remained in the final version of the agreement that the parties executed. Those provisions incorporated the waiver of sovereign immunity contained in the sale agreement and specifically provided that the settlement agreement would be governed by the laws of the state of Michigan rather than by tribal law. Unlike in *Memphis Biofuels*, there is no indication that Bates was aware

that a tribal resolution was necessary for the Tribe to waive its sovereign immunity or tribal-court jurisdiction.

During the months following the execution of the settlement agreement, neither the Tribe nor the Tribe's attorney represented that the agreement was invalid, and $49,000 was paid to Bates pursuant to the agreement. Not until after Bates filed its complaint did the Tribe contend that the settlement agreement was unenforceable. These factors show that the Tribe was aware of the settlement negotiations and authorized Matson to execute the agreement despite the waivers of sovereign immunity and tribal-court jurisdiction contained therein.

Further, although there was no tribal resolution specifically pertaining to the waivers of sovereign immunity and tribal-court jurisdiction in the settlement agreement, the Tribe conceded in the trial court that there was a tribal resolution, Resolution No. 2000-148, pertaining to the sale agreement and that § 10 of the sale agreement was incorporated into the settlement agreement. The Tribe asserted in the trial court that it had waived its sovereign immunity and tribal-court jurisdiction with respect to the sale agreement and option agreement. The Tribe contended that Resolution No. 2000-148 authorized the waivers of sovereign immunity and tribal-court jurisdiction regarding both agreements and that the only question was whether those waivers were incorporated into the settlement agreement. The Tribe argued for the first time in its motion for reconsideration in the trial court that the resolution did not waive sovereign immunity with respect to the sale agreement or the option agreement. The Tribe asserts the same argument in this Court and contends that the waivers authorized by the resolution

pertained only to a guaranty agreement with Bank One. By conceding that the waivers in the option agreement and sale agreement were valid, however, the Tribe waived any argument that they were invalid because they were not supported by a tribal resolution. A party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute. *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002).

Accordingly, the circumstances of this case support the trial court's determination that the Tribe waived its sovereign immunity and tribal-court jurisdiction. The conduct of the parties both during the settlement agreement negotiations and after the agreement was executed support this conclusion. The settlement agreement itself contained waivers of sovereign immunity and tribal-court jurisdiction and incorporated by reference the clear and unequivocal waivers set forth in the sale agreement, which the Tribe conceded was supported by a valid resolution. In light of these facts, the trial court correctly ruled that the Tribe had waived its sovereign immunity and tribal-court jurisdiction and correctly granted summary disposition and entered judgment in Bates's favor.

Affirmed.