# STATE OF MICHIGAN

# COURT OF APPEALS

---

AUTO-OWNERS INSURANCE COMPANY,
HOME-OWNERS INSURANCE COMPANY,
and CALEB CASANOVA,

        Plaintiffs-Appellees,

v

COMPASS HEALTHCARE PLC d/b/a
COMPASS HEALTH, and LANSING
NEUROSURGERY,

        Defendants-Appellants.

FOR PUBLICATION
December 18, 2018
9:00 a.m.

No. 339799
Ingham Circuit Court
LC No. 16-000870-CK

---

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

Defendants appeal as of right the trial court's opinion and order denying their motion for summary disposition, sanctions, and attorney fees, and instead granting summary disposition and awarding attorney's fees and costs to plaintiffs. We affirm in part, and reverse in part as to the trial court's award of reasonable attorney's fees and costs under MCL 445.257(2).

## I. RELEVANT FACTUAL BACKGROUND

On July 3, 2014, plaintiff Caleb Casanova was injured in an automotive accident. Casanova sustained a concussion, a comminuted fracture of his C2 vertebrae, and various other minor injuries. Casanova was admitted to the intensive care unit of Sparrow Hospital, and defendants[1] provided treatment to him on July 4, 2014. Compass Health submitted a bill to Home-Owners Insurance Company (Home-Owners), Casanova's no-fault insurer, for $1,859.00. On August 5, 2014, Home-Owners submitted payment to Compass Health in the amount of $1,076.14. On August 13, 2014, Compass Health sent an invoice directly to Casanova for the remaining $782.86. A second statement was sent to Casanova on September 5, 2014.

---

[1] Lansing Neurosurgery is a division of Compass Health.

On September 18, 2014, Home-Owners sent a second letter to Compass Health, indicating that if Compass Health wished to dispute the reasonableness of its $1,076.14 payment, it was to deal with Home-Owners directly, and not with Casanova. Regardless, Compass Health continued to send Casanova invoices on October 20, 2014, and on February 11, 2016. On March 1, 2016, Home-Owners sent second letter to Compass Health, advising that reasonable payment had been made to Compass Health on behalf of Casanova in accordance with MCL 500.3107 and MCL 500.3157. Accordingly, Compass Health could pursue legal action if it wished to dispute the reasonableness of the payment, but was to cease direct contact with Casanova. Regardless, Compass Health sent two more invoices to Casanova on April 11, 2016, and April 20, 2016.

On May 5, 2016, Home-Owners sent a third letter to Compass Health: this time a cease and desist. The letter advised Compass Health that Home-Owners Insurance Company was "the only proper party to any dispute as to the reasonableness of the payment[,]" and that all collections efforts directed at Casanova should be ceased. Yet on June 10, 2016, July 11, 2016, and August 10, 2016, Compass Health sent invoices directly to Casanova.

On November 15, 2016, plaintiffs filed a five count complaint against defendant, seeking a declaratory judgment under the No-Fault Act, MCL 500.3101 *et seq.*, seeking a "declaration from the [c]ourt as to whether Compass [Health] may attempt to obtain payment" of its "balance bill" directly from Casanova, regardless of the reasonable payment made by Home-Owners. Plaintiffs also sought injunctive relief, requesting that Compass Health be prevented from contacting Casanova regarding collections pending the outcome of the instant action. Casanova also sought relief under the Michigan Regulation of Collection Practices Act (the MRCPA), MCL 445.251 *et seq.*, seeking damages. Finally, all plaintiffs sought attorney fees pursuant to MCL 500.3148(2).

In lieu of an answer, defendants moved for summary disposition pursuant to MCR 2.116(C)(4) and (C)(8), and for sanctions pursuant to MCR 2.114(F). Defendants argued that plaintiff's claim for declaratory relief was moot, as the underlying debt giving rise to plaintiffs' claim was unenforceable. Specifically, defendants admitted that "[t]he debt is unenforceable . . . pursuant to the one-year-back rule that governs the recovery of benefits under" MCL 500.3145. Similarly, defendants argued that because the underlying debt was unenforceable, plaintiffs' claim for injunctive relief was not yet ripe for review. Finally, defendants argued that plaintiffs were not entitled to attorney fees under MCL 500.3148(2) because plaintiffs could not recover fees related to a lawsuit they initiated. Defendants also sought sanctions, claiming plaintiffs' lawsuit was "frivolous."

In response, Casanova argued that despite defendants' admission that the balance owed was unenforceable as a matter of law, defendants continued to contact him in an effort to collect, and for that reason, plaintiffs are entitled to the relief requested in their complaint. With his response to defendants' motion for summary disposition, Casanova included a counter-motion for summary disposition pursuant to MCR 2.116(C)(10), which Home-Owners concurred with. Plaintiffs agreed that all of the medical expenses incurred by Casanova were covered under his no-fault insurance policy with Home-Owners, and that pursuant to MCL 500.3157, Home-Owners had paid defendants a reasonable amount for services actually rendered. Accordingly, Casanova was not responsible for the difference. Further, in light of defendants' own admission

that the balance owed was unenforceable, summary disposition in favor of plaintiffs was appropriate.

Defendants replied, now arguing that plaintiffs had misunderstood their argument: although the "balance bill" was unenforceable under the No-Fault Act, Casanova still incurred an implied contractual obligation to pay independent of the No-Fault Act. Defendants articulated that they had not raised this earlier, as plaintiffs had never claimed the balance was unenforceable under contract law, and defendants were not required to negate every theory not raised by plaintiffs.

Following a hearing on defendants' motion for summary disposition, and Casanova's counter-motion for summary disposition, the trial court entered a written opinion and order granting summary disposition in favor of and awarding attorney fees and costs to plaintiffs, and denying defendants summary disposition, sanctions, and attorney's fees and costs. The trial court ultimately concluded that Michigan law is well settled, and there is no factual dispute, that Home-Owners is Casanova's no-fault insurer, and accordingly, are "liable to pay benefits for Casanova's care, treatment, and rehabilitation arising out of this injury." Further, the No-Fault Act provides that under MCL 500.3107, Home-Owners must pay all "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations[.]" Defendants, as medical providers, also have duties under the No-Fault Act, including the duty to charge no more than a "reasonable amount" for the products, services, and accommodations rendered. This means that a medical provider "shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance."

The trial court went on to conclude that "it is a well-settled matter of law that insurance providers like [Home-Owners] have an obligation to audit charges and make only reasonable payments as part of a cost-policing function meant to provide health care providers an incentive to keep costs to a minimum." Further, simply because plaintiffs did not frame their complaint as requesting a declaration about Casanova's contractual liability does not mean that plaintiffs' complaint "failed to state a claim or allege sufficient facts." Indeed, plaintiffs' "argument, through the Complaint and pleadings, is clearly that they are seeking a declaration on the question of whether the practice of reasonable partial payments made by insurers to providers allowed by the No-Fault Act should result in liability to the insured." To that end, the trial court concluded that based on relevant case law, statutory interpretation, and public policy:

> a [medical] provider cannot lawfully charge more than a reasonable amount for products, services, and accommodations, [and it] is clear, that once an insurer has made its required audit, determination, and payment of benefits for the reasonable and necessary charges billed by providers, a provider cannot then pursue and collect the remainder of the bill from a patient insured. Where a provider disputes an insurer's determination and subsequent partial payment, that dispute belongs solely between the provider and insurer, and is subject to the one-year-back provision of MCL 500.3145.

Finally, the trial court concluded that by sending defendant at least ten collections letters or billing statements, and ignoring the cease and desist letters sent by Home-Owners, defendants had willfully violated the MRCPA,

> by making misleading statements to Casanova that he owed the balance bill, where [d]efendants were on notice that Casanova's liability was in dispute and where Casanova never owed the bill charged in accordance with the No-Fault Act, pursuant to MCL 445.252(e). . . . Casanova is thus entitled to $150 in damages per violation, that being each of the ten billing statements sent to Casanova in an attempt to collect a debt he did not owe.

The trial court reiterated that because defendants violated MCL 445.252(e), plaintiffs were entitled to reasonable attorney's fees and costs under MCL 445.257(2).

Two days after the trial court entered its opinion and order, our Supreme Court issued its decision in *Covenant Medical Center, Inc v State Farm Mutual Auto Insurance Company*, 500 Mich 191; 895 NW2d 490 (2017). Accordingly, defendants moved for reconsideration of the trial court's opinion and order under MCR 2.119(F). Defendants argued that after *Covenant*, medical providers have "no statutory cause of action under the No-Fault Act against insurers, but that they are not remediless as providers can seek payment from the insured person for their reasonable charges." Accordingly, because *Covenant* is controlling "and precludes a finding in favor of [p]laintiffs," reconsideration is appropriate under MCR 2.119(F).

The trial court entered an opinion and order denying defendants' motion for reconsideration on August 7, 2017. The trial court concluded, in relevant part:

> This Court acknowledges that, pursuant to *Covenant*, [d]efendants had a legal right to seek payment directly from Casanova under the provisions of the No-Fault Act. However, the issue presented before this Court was a separate consideration: whether health care providers could seek payment of "balance bills" from a patient-insured on a *contractual* liability theory, rather than under the No-Fault Act, after a provider's charges were audited for reasonableness and the provider was paid a partial payment based on the findings of those audits. This Court finds that although the May 23, 2017 Opinion & Order erred with regard to the determination that providers must dispute partial payments with insurers, rather than patient-insured, it does not affect this Court's determination that a provider does not have a *contractual* right to pursue a patient-insured after a provider's charges have been determined to be unreasonable in accordance with the No-Fault Act, and therefore, a different disposition of the motion is not required.

> \* \* \*

> This Court determined that the provisions of the No-Fault Act requiring a provider to charge only "reasonable and necessary charges," and the provisions of the Act requiring an insurer to pay "[a]llowable expenses consisting of all reasonable charges. . ." imposed a standard of reasonableness that an insurer was

-4-

duty-bound to enforce through audits. MCL 500.3107, MCL 500.3157. The *Covenant* decision did not change or affect either the standard of reasonableness or the insurer's duty to audit; indeed, the *Covenant*, decision noted that a provider may seek payment only for a provider's *reasonable* charges. Since the present case raises the issue of a "balance bill," *Covenant* does not provide [d]efendants with an unfettered right to pursue the patient-insured, Casanova, because [d]efendants' charges were found to be unreasonable. This Court erred when it placed the dispute over whether [d]efendants' charges were reasonable between [d]efendants and Auto-Owners and Home-Owners, as *Covenant* removed a provider's cause of action against an insurer absent an assignment of no-fault benefits, but *Covenant* does not remove the necessity of resolving the dispute under the provisions of the No-Fault Act.

The trial court further noted that in their pleadings, defendants had admitted that the balance in question was unenforceable under the No-Fault Act's one-year-back rule. Based on the foregoing, it concluded that "a different disposition of this case is not required." This appeal followed.

II. MEDICAL PROVIDER'S RIGHT TO SEEK PAYMENT OF "BALANCE BILL"

Defendants first argue that upon reconsideration, the trial court erroneously refused to reverse its denial of summary disposition in plaintiffs' favor, instead erroneously concluding that despite *Covenant*, "medical providers have no *contractual* right to seek payment from their patients once their patients' insurers have paid the portion of the medical bills *that the insurer deems reasonable*." We disagree.

"This Court reviews for an abuse of discretion a trial court's ruling on a motion for reconsideration." *Sanders v McLaren-Macomb*, 323 Mich App 254, 264; 916 NW2d 305 (2018). An abuse of discretion occurs when the trial court's decision is "outside the range of reasonable and principled outcomes." *Id*. MCR 2.119(F)(3) requires the "party moving for reconsideration to 'demonstrate a palpable error by which the court and the parties have been mislead and show that a different disposition of the motion must result from the correction of the error." The trial court has "considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties." *Id*. at 264-265 (citation omitted.) Additionally, we review questions of law and the interpretation of statutes de novo. *Haksluoto v Mt. Clemens Regional Med Ctr*, 500 Mich 304, 309-310; 901 NW2d 577 (2017).

Defendant correctly argues that in *Covenant*, our Supreme Court held that "healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act," but rather "a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges." *Covenant*, 500 Mich at 196-196, 217. Accordingly, pursuant to MCR 2.119(F)(3), the trial court was well within its discretion to consider defendants' motion for reconsideration, and did in fact correctly conclude that it had previously erred in concluding that defendants were required to pursue only Home-Owners. Instead, after *Covenant*, the trial court correctly concluded on reconsideration

that defendants had a "legal right to seek payment directly from Casanova under the provisions of the No-Fault Act."

The trial court also correctly concluded that despite our Supreme Court's holding in *Covenant*, defendants were still not entitled to summary disposition in their favor. The original question before the trial court was whether defendants could "seek payment of 'balance bills' from a patient-insured on a *contractual* liability theory, rather than under the No-Fault Act, after a provider's charges were audited for reasonableness and the provider was paid a partial payment based on the findings of those audits." We agree with the trial court, and conclude that the answer is no.

Under MCL 500.3157, a medical provider may only charge a "reasonable amount for the products, services and accommodations rendered" to an injured person for an accidental bodily injury covered by personal protection insurance. Likewise, under MCL 500.3107(1)(a), a no-fault insurer is only responsible for paying "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation." Therefore, the trial court did not abuse its discretion in concluding that the "*Covenant* decision did not change or affect either the standard of reasonableness or the insurer's duty to audit; indeed, the *Covenant* decision noted that a provider may seek payment only for a provider's *reasonable* charges."

Our Supreme Court's decision in *Covenant* also did not affect this Court's decision in *AOPP v Auto Club Ins Ass'n*, 257 Mich App 356; 670 NW2d 569 (2003), aff'd 472 Mich 91; 693 NW2d 358 (2005). This Court confirmed in *AOPP* that under the No-Fault Act, a medical provider will only be paid for reasonable and necessary charges actually incurred. *AOPP*, 257 Mich App at 374. The No-Fault Act,

> requires that an insurer only pay on behalf of the insured a "reasonable" charge for the particular product or service. However, the Legislature has not defined what is "reasonable" in this context, and, consequently, insurers must determine in each instance whether a charge is reasonable in light of the service or product provided. [*Id*. at 379.]

Again, in *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 448; 814 NW2d 670 (2012), this Court concluded that no-fault insurers are *required* to challenge a medical provider's charges in order to determine if they are reasonable, and that medical providers should expect no less. Further, the " 'customary' fee a particular provider charges under [MCL 500.3157] does not define what constitutes a 'reasonable charge' under [MCL 500.3107]. . . . Rather, the 'customary fee' is simply the cap on what health-care providers can charge, and is not, automatically, a 'reasonable' charge requiring full reimbursement under [MCL 500.3107]." *AOPP*, 257 Mich App at 377.

However, medical providers are permitted to "challenge [the] failure to fully reimburse them for medical bills as a violation of" the No-Fault Act. *Id*. at 380. They must do so in the trial court, and have the burden of establishing by a preponderance of the evidence that their charges were reasonable. *Id*. See also *Bronson*, 295 Mich App at 450, where this Court again reiterated that the No-Fault Act contemplates that,

insurers will assess the reasonableness of a provider's charges, paying that portion deemed reasonable, with the provider having the prerogative to then challenge the insurer's decision not to pay the entire charge submitted by filing suit. Once the action is filed, the provider has the burden of proving by a preponderance of the evidence the reasonableness of its charges.

As the trial court concluded in its opinion and order on reconsideration, "[t]he only effect of *Covenant* was to place the dispute over the reasonableness of the charges between a provider and a patient-insured, rather than between a provider and an insurer." It did not alter the *method* of disputing the reasonableness of the amount paid.

In this case, it is clear that defendants never filed an action against Home-Owners, or against Casanova, challenging Home-Owner's determination of the reasonableness of its charges. Likewise, defendants never raised the reasonableness of its charges as an issue in its motion for summary disposition, or any other responsive pleading, and never presented any evidence from which the trial court could have concluded by a preponderance of the evidence that the $1,859.00 incurred by Casanova was reasonable and necessary. Instead, defendants have chosen to harass Casanova over $782.86 outside of the courts since 2014.

To conclude that defendants could prevail on the theory of an implied contract is contrary to the purpose of the No-Fault Act, and its implications would allow medical providers to circumvent the protective nature of the No-Fault Act. Therefore, we conclude that any claim defendants may have against Casanova would be for payment of services rendered to an injured person "covered by personal protection insurance" under the No-Fault Act. See MCL 500.3157. Accordingly, reversal of the trial court's original opinion and order granting summary disposition in favor of plaintiffs was unnecessary, and it was not an abuse of the trial court's discretion to refuse to do so.

## III. ONE-YEAR-BACK RULE

Second, defendants argue that the trial court erroneously concluded that medical providers must file suit within one year from the date of providing medical services relating to automobile related injuries, as the one-year-back rule does not apply to benefits payable under Michigan contract law. Defendants further argue that after *Covenant*, a claim by a medical provider against its patient is not viewed as an action for recovery of PIP benefits under MCL 500.3145. Rather, it is an "attendant contract claim." We disagree.

Again, "[t]his Court reviews for an abuse of discretion a trial court's ruling on a motion for reconsideration." *Sanders v McLaren-Macomb*, 323 Mich App 254, 264; 916 NW2d 305 (2018).

We disagree with defendants' interpretation of *Covenant* with respect to whether a claim against a medical provider is now viewed as an action for recovery of PIP benefits, or a contract claim. Defendants would like this Court to conclude that after *Covenant*, a medical provider's claim against a patient-insured is an "attendant contract claim." However, the *Covenant* Court explicitly stated:

> We conclude today only that a healthcare provider possesses no statutory right to sue a no-fault insurer. . . . This Court need not consider whether [a medical provider] possesses a contractual right to sue . . . because [the medical provider] did not allege any contractual basis for relief in its complaint. [*Covenant*, 500 Mich at 217 n 39.]

Likewise, defendants never filed a complaint seeking payment from either Home-Owners or Casanova under a theory of implied contract or otherwise. The first time defendants advanced a theory of contractual liability was in a reply in opposition to Casanova's response to its motion for summary disposition. Moreover, given our conclusion *supra*, that any claim by defendants would still fall squarely within the parameters of the No-Fault Act, defendants' recovery would be subject to the one-year-back rule found in MCL 500.3145.

In this case, Home-Owners made a reasonable payment to Compass Health on behalf of Casanova on August 13, 2014. Therefore, in order to contest the reasonableness of the amount paid, or pursue the remaining $782.86, defendants would have had to file suit against Casanova on or before August 13, 2015. See MCL 500.3145, which provides that:

> an action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury . . . or unless the insurer has previously made a payment of personal protection insurance benefits for the injury.

Defendants concede they did not file any action in the trial court. Accordingly, any claim defendants may have had against Casanova is now barred by the one-year-back rule. The trial court did not abuse its discretion in concluding the same.

Moreover, defendants have conceded in their pleadings that, "[p]laintiffs' debt to [d]efendants in the amount of $782.86 for the outstanding balance of the services rendered to . . . Casanova on July 4, 2014 is unenforceable as a matter of law[,]" because defendants chose not to pursue legal action. Further, defendants conceded "[t]he debt is unenforceable . . . pursuant to the one-year-back rule that governs the recovery of benefits under the" No-Fault Act. Therefore, defendants have waived this argument. See *Bates Assoc, LLC v 132 Assoc, LLC*, 290 Mich App 52, 64; 799 NW2d 177 (2010), where this Court articulated that a "party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute."

## IV. RECOVERY UNDER THE MRCPA

Finally, defendants argue that the trial court erroneously granted Auto-Owners and Home-Owners relief under the MRCPA where only Casanova brought a claim. Therefore, Auto-Owners and Home-Owners are not entitled to the attorney's fees and costs awarded by the trial court under the MRCPA. We agree.

In their brief on appeal, Auto-Owners and Home-Owners concede that "the lower court awarded attorney fees only under the MRCPA and that only Mr. Casanova sought recovery under that Act in the Complaint. As a result, Auto-Owners and [Home-Owners] withdraw their

request for fees."  Further, Auto-Owners and Home-Owners correctly note in their brief on appeal that although the trial court had awarded fees to Auto-Owners and Home-Owners under MCL 445.257(2) in its original opinion and order, it had not yet ruled on the fee request prior to this appeal.  Therefore, Auto-Owners and Home-Owners argue, "any error on this point does not justify reversal."

Only Casanova sought relief under the MRCPA.  Therefore, only Casanova is entitled to damages and reasonable attorney's costs and fees under MCL 445.257(2).  Therefore, the trial court erred by awarding fees to Auto-Owners and Home-Owners on that basis.  Accordingly, we reverse the trial court's grant of reasonable attorney's fees and costs to Auto-Owners and Home-Owners under MCL 445.257(2).

We affirm in part, and reverse in part as to the trial court's award of reasonable attorney's fees and costs under MCL 445.257(2).


/s/ Kathleen Jansen
/s/ Michael F. Gadola