*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

ADAM KENNETH NOLIN,

   Defendant-Appellant.

UNPUBLISHED
April 22, 2021

No. 350543
Kent Circuit Court
LC No. 19-001161-FC;
    19-001162-FC

Before: MURRAY, C.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), two counts of assault with intent to commit murder, MCL 750.83, two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, third-degree fleeing and eluding, MCL 257.602a(3)(a), and unlawfully carrying a concealed weapon (CCW), MCL 750.227. The trial court sentenced defendant to life imprisonment without the possibility of parole for the murder conviction, 225 months to 50 years' imprisonment for the assault convictions, one to five years' imprisonment for the fleeing and eluding and CCW convictions, and two years' imprisonment for the felony-firearm convictions. We affirm.

This case arises out of the shooting death of Tia Randall. Defendant lived with Randall and her two children. On the morning of Randall's death, she walked her children to the bus stop for school. When Randall returned home, she went to the bathroom. Defendant entered the bathroom and shot Randall in the head as she sat on the toilet. Defendant then fled the scene. He called his mother while in flight and essentially confessed that he had shot and killed Randall. According to defendant's mother, defendant informed her that Randall had been in the bathroom, that she was sitting on the toilet texting, that she looked up at defendant and smiled, and that defendant then blacked out, recalling only his smoking gun. Defendant's mother called 911 and told the operator about her son's claims; the 911 operator then called defendant on his cell phone. The operator testified that defendant stated that Randall was dead in the bathroom of their home. Defendant told the operator much more, which we will discuss later in this opinion. The police pursued defendant in a motor vehicle chase, and an officer rammed defendant's truck to stop what was becoming a highly dangerous situation on US 131. Defendant exited his vehicle and shot at

police officers before an officer struck defendant with his police cruiser. Defendant was then taken into custody.

During trial, several text messages were admitted into evidence. They were messages between Randall and a coworker and between defendant and Randall. The text messages established that Randall was romantically involved with her coworker. The text messages also revealed that defendant was aware of Randall's relationship with her coworker, that Randall and her coworker knew that defendant was cognizant of the relationship, that defendant was making an effort to accept the existence of the relationship but was struggling in his effort, and that defendant did not want the relationship thrown in his face at his home. Defense counsel affirmatively expressed that he had no objection to the admission of the text messages. The jury convicted defendant as indicated above. This appeal ensued.

Through appellate counsel, defendant first argues on appeal that the trial court erred by admitting the text messages because they constituted inadmissible hearsay. Defendant also challenges as inadmissible hearsay the testimony by one of defendant's friends with respect to statements defendant made to the friend. Defendant further contends that defense counsel was ineffective for failing to object to the admission of the text messages and the friend's testimony.

First, the text messages sent or statements made by defendant himself did not constitute hearsay because they were "offered against a party[,defendant,] and . . . [were] the party's own statement[s]." MRE 801(d)(2)(A). Accordingly, the trial court did not err by admitting defendant's text messages or statements, and defense counsel was not ineffective for failing to raise a futile or meritless objection to the evidence. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").[1]

Second, defendant waived any appellate challenge to the admission of the text messages because counsel expressed that he had no objection to their admission. "This Court has defined 'waiver' as the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Buie*, 491 Mich 294, 306; 817 NW2d 33 (2012) (quotation marks and citations omitted). "Defense counsel cannot acquiesce to the court's handling of a matter at trial, only to later raise the issue as an error on appeal." *Id.* at 312 (quotation marks and citations omitted). A party is not permitted to assert as error on appeal an issue that the party deemed proper below because doing so would allow the party to harbor error as an appellate parachute. *Hoffenblum v Hoffenblum*, 308 Mich App 102, 117; 863 NW2d 352 (2014); *Bates Assoc, LLC v 132 Assoc, LLC*, 290 Mich App 52, 64; 799 NW2d 177 (2010). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *Kowalski*, 489 Mich at 503; see also *In re Estate of Horton*, 325

---

[1] Whether counsel was ineffective presents a mixed question of fact and constitutional law, and factual findings are reviewed for clear error, whereas questions of law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

Mich App 325, 334 n 4; 925 NW2d 207 (2018) ("Jones waived this argument in the probate court by expressly stating that she had no objections to the admission of the copy of the document into evidence.").

Furthermore, the prosecution admitted evidence of the phone call between defendant and the 911 operator, during which defendant effectively spoke to the subject matter covered by the text messages. Defendant informed the operator that he had asked Randall for her cell phone, that he queried her regarding whether she had set up a date with the coworker, that Randall had walked out of the house with the children and the cell phone and came back with a happy face, that defendant "was trying to be cool with" Randall going on a date, that Randall was supposed to leave the relationship or affair at work and outside the home but failed to do so, that Randall could be found dead in the bathroom, and that defendant "just remember[ed] looking at the phone." There was also testimony by defendant's friend that established that defendant knew about the relationship between Randall and her coworker before Randall's death. Consequently, assuming a hearsay violation and the absence of a waiver relative to the admission of the text messages, we must conclude that defendant cannot establish a reasonable probability of a different outcome, i.e., prejudice, had the messages not been admitted. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (a claim of ineffective assistance of counsel generally requires proof of prejudice); *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (reversal on plain-error review requires a demonstration of prejudice).

Additionally, it is evident from the record that defense counsel actually utilized the text messages in an attempt to demonstrate that defendant killed Randall in the heat of passion under adequate provocation and without premeditation and deliberation. To establish ineffective assistance of counsel, a defendant must demonstrate, in part, deficient performance, *Carbin*, 463 Mich at 600, meaning that counsel's representation fell below an objective standard of reasonableness, *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Therefore, there exists a strong presumption of effective assistance of counsel. *Id.* "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *Id.* at 242-243. We cannot, however, insulate the review of counsel's performance by simply calling it trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Initially, this Court must determine whether strategic choices were made upon the exercise of reasonable professional judgment. See *id.*; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015). "The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel." *People v Williams*, 240 Mich App 316, 332; 614 NW2d 647 (2000). In *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. [Citations omitted.]

In this case, defense counsel conceded to the jury that defendant killed Randall. The defense theories going into the trial were that there was insufficient evidence of premeditation and deliberation and that defendant's thinking was disturbed by emotional excitement, i.e., that he acted in the heat of passion. Counsel's position, therefore, was that defendant committed either second-degree murder or voluntary manslaughter, but not first-degree murder. Defense counsel referenced the text messages in his opening statement[2] and in his closing argument.[3] It is plainly evident that counsel voiced no objection to the admission of the text messages because counsel wished to use the messages in support of the theories of defense. Ostensibly, defense counsel was of the view that he needed the text messages to provide context for the killing and to show the jury why defendant allegedly lost control. At the conclusion of the proofs and before closing arguments, the trial court rejected defense counsel's request for an instruction on voluntary manslaughter.[4] Accordingly, counsel limited his closing argument to the stance that there was insufficient evidence of premeditation and deliberation; therefore, the jury should convict defendant of second-degree murder.

While it is true that the prosecution used the text messages, in part, to argue in support of first-degree murder, we cannot conclude that defense counsel's decision to use the same text messages to argue against first-degree murder fell below an objective standard of reasonableness. Defense counsel did not have much to work with in this case and, again, "[t]he fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel." *Williams*, 240 Mich App at 332.

In a supplemental Standard 4 brief, defendant raises numerous claims of error and alleged instances of ineffective assistance of counsel. We have carefully scrutinized defendant's pro per

---

[2] As an example, counsel stated: "What we do know is that Tia [Randall], in her text to [her coworker], says . . . ."

[3] As a couple of examples, counsel stated: "But if you look at the texts from that time . . . ."; "And all through these texts . . . ."

[4] Counsel's attempt to pursue a heat-of-passion, voluntary manslaughter course reflected the exercise of reasonable professional judgment. Indeed, in our view it was a close call concerning whether the jury should have been instructed on voluntary manslaughter. That issue has not been raised on appeal. Moreover, if it were raised it would fail because the jury convicted defendant of first-degree murder and not second-degree murder, which would render the failure to instruct on voluntary manslaughter harmless error, assuming error occurred. See *People v Sullivan*, 231 Mich App 510, 520; 586 NW2d 578 (1998) ("Furthermore, where a defendant is convicted of first-degree murder, and the jury rejects other lesser included offenses, the failure to instruct on voluntary manslaughter is harmless. Here, the jury rejected a verdict of second-degree murder . . . .") (citations omitted).

arguments. We conclude that the arguments are either indecipherable, nonsensical, wholly irrelevant, undeveloped and requiring significant unraveling and research, factually unsupported by the record, directly inconsistent with the record or completely unsupported by law, or a combination of these shortcomings. We hold that defendant's Standard 4 arguments do not warrant reversal.

We affirm.


/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Anica Letica