WILSON v STILWILL

Docket No. 77-4333. Submitted June 4, 1979, at Lansing.—Decided September 5, 1979. Leave to appeal applied for.

Plaintiffs, Irving J. Wilson and Margaret D. Wilson, brought an action against Dr. George D. Stilwill and Edward W. Sparrow Hospital Association alleging medical malpractice. The Ingham Circuit Court, Thomas L. Brown, J., directed a verdict in favor of the hospital for failure to introduce evidence of an applicable standard of care and the jury returned a verdict of no cause of action in the claim against Dr. Stilwill. Plaintiffs appeal alleging error in allowing plaintiffs' expert witness to be questioned concerning his involvement in other malpractice cases, in defense counsel's characterization of plaintiffs' expert in closing argument as a professional witness and in directing a verdict in favor of the hospital. *Held:*

1. The testimony concerning the plaintiffs' expert witness's involvement in other malpractice cases was probative on the question of the weight to be given the expert's testimony and was properly admitted.

2. Defense counsel's characterization of a witness as a professional witness was a reasonable inference drawn from the evidence where the testimony indicated that 40% of the witness's income was derived from evaluating medical disabilities and that he had been involved in various aspects of medical malpractice in at least five cases.

3. The trial court did not err in directing a verdict in favor of the hospital where the evidence showed that the plaintiff suffered a bacterial infection following treatment but where there was no testimony establishing that the method of treatment rendered by the hospital was negligent or contrary to any professional standard of conduct. Any jury verdict favorable to plaintiffs would have been based on mere speculation as to the cause of the infection.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur 2d, Expert and Opinion Evidence §§ 181, 183, 184.
[2] 75 Am Jur 2d, Trial § 260.
[3] 57 Am Jur 2d, Negligence §§ 6, 7.

1. Witnesses — Medical Malpractice — Expert Witnesses — Prior Experience.

It was not error in a malpractice action for counsel for a defendant to elicit from a plaintiff's expert testimony concerning his involvement in other malpractice cases; such testimony is probative on the question of the weight to be given the expert's testimony by the trier of fact.

2. Trial — Inferences — Closing Argument.

Reasonable inferences may be drawn from the evidence by counsel in closing argument.

3. Negligence — Medical Malpractice — Standard of Conduct.

A trial court did not err in directing a verdict in favor of a defendant hospital in a malpractice action where the evidence showed that the plaintiff suffered a bacterial infection following treatment but where there was no testimony establishing that the method of treatment rendered by the hospital was negligent or contrary to any professional standard of conduct.

*Newman & Mackey,* for plaintiffs.

*Fraser, Trebilcock, Davis & Foster* (by *Eugene F. Townsend* and *C. Mark Hoover),* for defendant Stilwill.

Before: M. F. Cavanagh, P.J., and V. J. Brennan and H. R. Carroll,* JJ.

V. J. Brennan, J. Plaintiffs, Irving J. and Margaret D. Wilson, appeal by right from a lower court order directing a verdict in favor of defendant Edward W. Sparrow Hospital Association and from a jury verdict of no cause of action in plaintiffs' suit against defendant Dr. George D. Stilwill.

Plaintiffs raise three issues in this appeal. The first pertains to a line of questioning directed to plaintiffs' expert, Dr. Waldo Badgley, by counsel for defendant Dr. Stilwill on cross-examination.

_____

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

It was elicited from plaintiffs' expert that 40% of his practice had to do with disability evaluation; that he had been involved in two or three cases in which there was suspected malpractice; that one of these cases occurred in Grand Haven and in that particular case the present plaintiffs' attorney was the counsel for the plaintiffs. In addition plaintiffs' expert was also involved in a case concerning the Mason General Hospital, and in that particular case the plaintiffs' attorney was the same attorney representing plaintiffs in the instant case. It was only after the doctor was questioned about his participation in a malpractice suit against Foote Hospital in Jackson,. Michigan, that counsel for plaintiffs objected to this line of questioning. The trial court then requested counsel for Dr. Stilwill to relate the latter case to the witness's competency to testify in the instant action. When counsel could not do so, plaintiffs' objection was sustained.

Following the ruling by the trial court on his objection, counsel for plaintiffs did not request a curative instruction to the jury. In *Treece v The Greyhound Bus Company,* 63 Mich App 63, 66; 234 NW2d 404 (1975), the Court addressed a similar factual situation. In that case, the expert offered by the plaintiffs was asked on cross-examination about his status in the medical community and his license to practice at a particular hospital. He was further questioned about his relationship with counsel for the plaintiffs. The objections by plaintiffs' counsel to each of these questions were sustained by the trial court. On appeal, plaintiffs asserted that the asking of these questions was so prejudicial as to require reversal notwithstanding the trial court's sustaining of the objections. The Court disagreed and, with particular regard to the last question, held that all of the questions were

probative of the weight of the doctor's testimony and, in any event, that the failure of plaintiffs' counsel to request a curative instruction waived any error on appeal.

Although the Supreme Court has held that it is reversible error to attack a witness on the basis of innuendo and unfounded accusations, *Kern v St Luke's Hospital Ass'n of Saginaw,* 404 Mich 339; 273 NW2d 75 (1978), that is not the situation in the case at bar. In *Kern* a defense counsel attempted to show that the plaintiffs' counsel had conspired with the plaintiffs' medical expert to provide "bought and paid for" untrue and collusive testimony from three out-of-state physicians. The Supreme Court found that by the time the jury retired to deliberate the defense counsel had succeeded in conveying the message that plaintiffs would not have relied entirely on out-of-state physicians to testify had their case been meritorious. The Court concluded that this message was a false one, and that the trial tactics on which it was based were prejudicial to the plaintiffs. Significantly, the Supreme Court's opinion noted but did not cite as error the questioning by defendants' counsel concerning "the amount of testimony Dr. Kaplan [a witness on behalf of the plaintiffs] had provided in malpractice cases and his experience in medical-legal matters", *Kern, supra,* 348.

In the present case no error was committed below by the elicitation from plaintiffs' expert testimony concerning his involvement in other malpractice cases. This testimony was probative on the question of weight to be given by the trier of fact.

The next issue relates to an alleged characterization of plaintiffs' doctor as a "professional witness" by counsel for defendant Dr. Stilwill in his

closing argument to the jury. In his closing argument to the jury, counsel for the defendant doctor stated:

"In an attempt, ladies and gentlemen, to find out the most probable cause of Mr. Wilson's injury we went to the two largest at least medical institutions in the State of Michigan. We went to the University of Michigan and we went to Henry Ford Hospital. And we got there, and we went to the sub-department of internal medicine, the medical practice of infectious diseases. We did not go to professional witnesses; we went to professional physicians qualified better than any other man in the State of Michigan, to the best of our knowledge, to determine the answers to the questions. What caused the infections; and, secondly, could the infection work so fast as to cause paralysis in Mr. Wilson's hand which was evidenced by the time he regained full consciousness? We gave them all of the facts, and in Cox's [one of the defendant doctor's experts] hypothetical we used facts most favorable to the Plaintiff, and he said there was no evidence of malpractice."

Counsel for plaintiffs did not immediately object to this statement but did request a curative instruction sometime later. The trial court denied plaintiffs' request holding that the statement made no reference to plaintiffs' expert and, even if it did, it would have constituted fair comment under all the circumstances of the case. We agree with the trial court's ruling.

Assuming *arguendo* that the statement was directed toward plaintiffs' expert, reversible error was not committed. In closing argument, reasonable inferences from the testimony may be drawn by counsel. *Grewette v Great Lakes Transit,* 49 Mich App 235; 211 NW2d 531 (1973). This comment was warranted from the testimony of plaintiffs' expert that approximately 40% of his income was derived from evaluating medical disabilities

and that he had been involved in various aspects of medical malpractice in at least five cases. The statement of counsel amounted to a fair characterization of the expert witness.

The final issue raised is whether the lower court erred in directing a verdict in favor of the defendant hospital on the grounds that plaintiffs had failed to establish a prima facie case because no expert testimony concerning the applicable standard of care was introduced.

Plaintiffs argue on appeal, as they did below, the applicability of the doctrine of *res ipsa loquitur,* in that the mere occurrence of an infection in plaintiff Wilson's arm is sufficient to establish a case for the jury. Plaintiffs further argue that there was no necessity to introduce any expert testimony at trial to establish a standard of care because the liability of the defendant hospital was not predicated upon the breach of a professional standard of care but upon the breach of ordinary care. We disagree.

Under the doctrine of *res ipsa loquitur* a rebuttable presumption that a defendant was negligent arises upon proof by a plaintiff that the instrumentality causing a plaintiff's injury was in the defendant's exclusive control and that the accident was one that ordinarily does not happen in the absence of negligence. *Rohdy v James Decker Munson Hospital,* 17 Mich App 561; 170 NW2d 67 (1969), citing as authority *Gadde v Michigan Consolidated Gas Co,* 377 Mich 117, 124; 139 NW2d 722 (1966). In *Rohdy,* the Court discussed the applicability of the doctrine to a hospital malpractice suit factually similar to the case at bar. The Court held that the doctrine did not apply to the case before it because the mere occurrence of an infection is not enough to imply negligence. The Court further

found that on the evidence presented one could only speculate or conjecture that the infection occurred as a result of negligence. Consequently, the lower court's grant of the defendant hospital's motion for judgment notwithstanding the verdict was affirmed.

In the present case, as in *Rohdy,* the evidence in the record merely shows that the plaintiff suffered a bacterial infection following a hospital treatment. There was no testimony establishing that the method of treatment rendered by the hospital was negligent or contrary to any professional standard of conduct. Any jury verdict favorable to plaintiffs would have been based on mere speculation as to the cause of the infection.

Affirmed.