*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JESSICA OHST,

      Plaintiff/Counterdefendant-Appellee,

v

MATTHEW J. CREHAN,

      Defendant/Counterplaintiff/Third-
      Party Plaintiff-Appellant,

and

COASTLINE CAPITAL, LLC, STEPHEN
BENEDICT, and JOHN DOE,

      Third-Party Defendants-Appellees.

UNPUBLISHED
June 10, 2021

No. 350787
Muskegon Circuit Court
LC No. 18-000949-CH

Before: BOONSTRA, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Defendant/counterplaintiff/third-party plaintiff Matthew J. Crehan (Crehan) appeals by right the judgment entered by the trial court following a jury verdict. The jury found in favor of plaintiff/counterdefendant Jessica Ohst (Ohst) and awarded damages in the amount of $23,725.24; the jury also returned a verdict of no cause of action on Crehan's third-party complaint against Coastline Capital, LLC (Coastline) and the other third-party defendants[1]. We affirm.

---

[1] As we will discuss, Coastline is a real estate investment company that purchases property at foreclosure auctions. Of the other third-party defendants, Douglas Cameron McNeil (McNeil) is a consultant who does work with Coastline; Stephen Benedict (Benedict) is a friend and business competitor of McNeil who served Ohst's complaint on Crehan; and the "John Doe" was identified at trial as a construction contractor who occasionally did work for Coastline.

-1-

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In January 2018, Ohst owned a home that was facing foreclosure. Crehan mailed Ohst a letter in an envelope marked: "STOP FORECLOSURE." The body of the letter read:

> Recently, foreclosure has started on your property. Hopefully, you will be able to catch up the payments and keep your property. However, if you are unable to catch up the payments, but still wish to keep possession of the property, contact me soon.

> If foreclosure continues, you will be evicted. By contacting me today, we can stop that from happening.

> If you do not want to keep the property, then please contact me so we can discuss how to prevent a foreclosure from appearing on your credit report and also eliminate your responsibility for possibly paying a deficiency judgment to the lender.

> Contact me now and let's halt the foreclosure process and help your credit score improve, at no cost to you!

Ohst testified at trial that, after receiving this letter, she met with Crehan to discuss stopping the foreclosure; on January 17, 2018, in reliance on Crehan's promises made at the meeting, Ohst signed an agreement to sell her home to Crehan for the purchase price of one dollar. The purchase agreement provided that she would vacate the home by February 28, 2018. On the same date that she signed the purchase agreement, Ohst also signed a quitclaim deed, transferring the property to Crehan. However, Ohst denied that Crehan ever paid her the purchase price.[2]

Nonetheless, Ohst's home proceeded to foreclosure. On January 26, 2018, Coastline purchased the property at a sheriff's sale for $63,301. At the time of foreclosure, Ohst owed Huntington Bank $87,026.24 on her mortgage, meaning that there remained an outstanding balance on Ohst's loan in the amount of $23,725.24. Ohst testified that the foreclosure now appears on Ohst's credit report. In February 2018, Ohst filed the current lawsuit against Crehan, claiming fraud and breach of contract.[3] Crehan answered, denying Ohst's claims, and filed a counterclaim against Ohst for possession of the property and reformation of the deed; he also filed a third-party complaint against Coastline and the other third-party defendants for tortious interference with a contract and business relationship, concert of action, and civil conspiracy.

---

[2] On appeal, Crehan claims that Ohst admitted at trial that she was paid one dollar by Crehan. The record does not support this assertion. Ohst acknowledged that the purchase price in the agreement was one dollar, but expressly denied receiving that dollar or any other consideration from Crehan.

[3] Both Ohst's complaint and Crehan's third-party complaint contained other claims that are not at issue on appeal; those claims have been omitted for clarity.

Crehan's answer also included a demand for a reply under MCR 2.110(B)(5)[4] Ohst filed a answer to Crehan's counterclaim.

Before trial, Crehan moved for summary disposition under MCR 2.116(C)(10) with respect to whether he had breached the contract by failing to pay one dollar to Ohst, and under MCR 2.116(C)(8) with respect to Ohst's alleged failure to plead fraud with particularity. The trial court denied the motion, holding that Ohst had sufficiently pleaded her claim of fraud, and that a genuine issue of material fact existed as to whether consideration had been paid. Crehan later caused a default to be entered against Ohst for failing to reply to his answer to her complaint despite his demand for a reply, and subsequently moved for a default judgment. The trial court denied the motion and set aside the default, noting that Ohst had answered Crehan's counterclaim, that the issues in the case were fully developed, and there was no prejudice to Crehan. The trial court allowed Ohst to file a late reply to Crehan's demand for a reply.

The matter proceeded to trial. In contrast to Ohst's version of events, Crehan maintained at trial that he had in fact paid one dollar to Ohst. Crehan also testified that he had promised Ohst that he would stop the foreclosure process by redeeming the property after the foreclosure on the mortgage had already taken place, and further that he would prevent a "non-redeemed foreclosure" from appearing on Ohst's credit report. Crehan also testified that he would have redeemed the property if not for Coastline's purchase, and that an error in the property description on the quitclaim deed had prevented him from obtaining financing to redeem the property. Crehan asserted that Coastline had paid for Ohst's legal representation so that she could sue Crehan.

McNeil testified on behalf of Coastline, and stated that Coastline had purchased the property and subsequently contacted Ohst in the belief that she was the previous owner of the home. It offered to pay her for the keys to the property and sought an inspection. Because Ohst thought the matter had been "handled" through her agreement with Crehan, she became concerned and contacted an attorney. McNeil testified that he had paid $2,000 toward Ohst's legal fees, but that he decided to do so only after Ohst had decided to pursue a lawsuit. McNeil testified that he did so to "right a wrong" because Ohst had received no benefits from her bargain with Crehan. McNeil also testified that Crehan's use of the term "non-redeemed" foreclosure was a "complete fiction" with no legal meaning. McNeil testified that that a foreclosure can be stopped, and there are investors who get involved before foreclosure. But stopping a foreclosure requires paying off the bank before the foreclosure takes place. Once the sale occurs and the mortgage is discharged, the foreclosure "is done."

The jury returned a verdict in Ohst's favor on her claims for fraud and breach of contract. The jury awarded her $23,725.24 on her fraud claim, which represented the outstanding balance on her Huntington Bank loan.[5] The jury returned a verdict of no cause of action on Crehan's third-

---

[4] MCR 2.110(B)(5) provides that a responsive pleading must be filed in response to "an answer demanding a reply."

[5] The jury also awarded Ohst "attorney fees" on her contract claim, but the trial court vacated the attorney-fee award on the basis that no evidence of attorney fees had been presented. On the basis that Ohst had been made whole by the award of money damages on her fraud claim, the trial court

party complaint. The trial court entered judgment consistent with the jury's verdict and later denied Crehan's motions for a judgment notwithstanding the verdict (JNOV) and a new trial.

This appeal followed.

## II. MOTION FOR SUMMARY DISPOSITION

Crehan argues that the trial court erred by denying his motion for summary disposition under MCR 2.116(C)(10) regarding Ohst's breach of contract claim. We disagree. We review de novo a trial court's decision on a motion for summary disposition. *Magley v M & W Inc*, 325 Mich App 307, 313; 926 NW2d 1 (2018).

> When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all the evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party. [*Id*. (quotation marks and citation omitted).]

Crehan argues that Ohst's breach of contract claim was premised on his failure to pay the consideration listed in the purchase agreement, i.e., the one dollar purchase price. Crehan argues that the documentary evidence he submitted with his motion—the quitclaim deed, the contract, or both—functioned as a "receipt" for payment, and that, as a receipt, this documentary evidence conclusively established that Ohst had received one dollar from Crehan. We disagree.

Contrary to Crehan's arguments, even if either document is construed as a receipt[6] "a written acknowledgment of receipt of consideration or other form of payment in a contract merely creates a rebuttable presumption that consideration has, in fact, passed." *Claire-Ann Co v Christenson & Christenson, Inc*, 223 Mich App 25, 32; 566 NW2d 4 (1997). "Neither the parol evidence rule nor the doctrine of estoppel bars the presentation of evidence to contradict any such acknowledgment." *Id*. In responding to Crehan's motion, Ohst submitted an affidavit denying that Crehan had "tendered any form of consideration" to her. Therefore, contrary to Crehan's

---

also denied Ohst's equitable request to set aside the sale on the basis of Crehan's fraud. Following trial, Crehan redeemed the property for himself.

[6] We note that neither document specifically states that Ohst *had received* one dollar from Crehan; the purchase agreement states that Crehan "will deliver the funds upon execution and delivery of the Deed for the property," and that the "[b]uyer deposits the sum of $1.00 to be applied to the purchase price," neither of which explicitly require the conclusion that Crehan *had paid* Ohst one dollar. The quitclaim deed merely states that the conveyance was made for consideration less than one hundred dollars. The ambiguity of the terms in the documents relied upon by Crehan further supports the trial court's denial of his motion. See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003) (noting that the meaning of ambiguous contractual terms is generally a question of fact reserved for the jury).

argument, his documentary evidence was not conclusive evidence of payment, and Ohst's affidavit was sufficient to raise a genuine issue of material fact. Accordingly, the trial court did not err by denying Crehan's motion for summary disposition under MCR 2.116(C)(10).

## III. MOTION TO SET ASIDE DEFAULT

Crehan also argues that the trial court erred by setting aside the default, because neither good cause nor a meritorious defense was shown. We disagree. We review for an abuse of discretion a trial court's decision to set aside a default. *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011). "A trial court abuses its discretion when it reaches a decision that falls outside the range of principled outcomes." *Id*.

The entry of a default is governed by MCR 2.603(A)(1), which states: "If a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the clerk must enter the default of that party . . . ." Once a default is entered, it may be set aside "if good cause is shown and a statement of facts showing a meritorious defense . . . is filed." MCR 2.603(D)(1).

"Although the law favors a determination of a claim on the basis of its merits, the policy of this state is generally against setting aside defaults and default judgments that have been *properly* entered." *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526; 672 NW2d 181 (2003) (emphasis added). But if a default was not "properly entered," it is an abuse of discretion not to find good cause to set aside the default. *Village of Edmore v Crystal Automation Sys Inc*, 322 Mich App 244, 255; 911 NW2d 241 (2017). A default is not properly entered when a party, though failing to file a responsive pleading, "has otherwise defended the action by taking some defensive action in the case." *Id*. at 257. This Court has also identified several factors that may be used to determine whether good cause exists, but these factors need not be considered if the default was not properly entered. *Id*. at 257-258. Finally, to determine whether there is a meritorious defense, the trial court should consider whether the affidavit of meritorious defense accompanying the motion to set aside contains evidence that:

> (1) the plaintiff cannot prove or defendant can disprove an element of the claim or a statutory requirement;

> (2) a ground for summary disposition exists under MCR 2.116(C)(2), (3), (5), (6), (7) or (8); or

> (3) the plaintiff's claim rests on evidence that is inadmissible. [*Id*. at 260 (quotation marks and citation omitted).]

In this case, the default was not properly entered. Even if a default may enter for failure to file a reply to an answer,[7] this is clearly a case in which Ohst "otherwise defended" the action, *id*.

---

[7] It is far from clear to this Court that a default under MCR 2.603(A)(1) may enter for failure to file a reply to an answer. The rule provides that a default may enter when "a party against whom a judgment for *affirmative relief* is sought has *failed to plead or otherwise defend* . . . ."

at 257, as the trial court recognized. Ohst clearly set forth her position in her complaint and in her response to Crehan's counterclaim. Before the entry of the default, she had also responded to—and defended against—Crehan's motion for summary disposition. Having actively and thoroughly litigated the points of contention between the parties, despite her failure to reply to Crehan's answer, Ohst "otherwise defended" the action within the meaning of MCR 2.603(A)(1). Accordingly, the default against Ohst did not properly enter, and the trial court did not abuse its discretion by finding good cause to set aside the default.[8] See *Village of Edmore*, 322 Mich App at 257.

Regarding Ohst's meritorious defenses,[9] the trial court stated:

> And in this case, first of all, I find there is—there is a meritorious defense in here. Now, I totally agree with your assessment, Mr. Crehan, that you have documentary evidence that consideration did indeed pass in this case. Nevertheless, the Plaintiff is taking the position that it didn't pass, so that's a question of fact. You certainly have some very powerful evidence in your favor, but I can't rule as a matter of law that a reasonable trier of fact could not conclude otherwise. But so

---

MCR 2.603(A)(1) (emphasis added). Under MCR 2.603(E), a party other than a plaintiff may seek a default, provided that the party "pleaded a cross-claim or counterclaim." Taken together, MCR 2.603(A)(1) and MCR 2.603(E) provide for a default against a plaintiff when the plaintiff has failed to plead or otherwise *defend* against a request for affirmative relief, such as a cross-claim or a counterclaim. This conclusion is further bolstered by MCR 2.603(D)(1) and the necessity of establishing a meritorious *defense* to set aside a default. Quite simply, the focus of MCR 2.603 is on entry of a default for failure to defend. Yet, an answer is not something against which one defends. Basic rules of pleading require a claim—and a demand for judgment on that claim—to be stated in a "complaint, counterclaim, cross-claim, or third-party complaint." MCR 2.111(B). An answer, even one that demands a reply, does not state a claim, and it does not seek "a judgment for affirmative relief. See MCR 2.111(C) to (F) (detailing matters to be included in responsive pleadings).

[8] Much of Crehan's argument on appeal centers on the contention that the trial court failed to make a good-cause finding. Although the trial court did not specifically use the phrase "good cause," a trial judge is presumed to know the law, see *Demski v Petlick*, 309 Mich App 404, 427; 873 NW2d 596 (2015), and the trial court's decision to set aside the default evinces a determination of good cause. In any event, because the default did not properly enter, it would have been an abuse of discretion not to find good cause. See *Village of Edmore*, 322 Mich App at 255.

[9] On appeal, Crehan asserts that the trial court should not have considered meritorious defenses before first finding good cause. The trial court did discuss meritorious defenses first in its analysis. However, although meritorious defenses and good cause are separate requirements, there is no sequential order in which they must be addressed, and there was nothing improper in the trial court considering meritorious defenses first. See, e.g., *ISB Sales Co*, 258 Mich App at 531-534 (considering meritorious-defense question before addressing good cause).

there is a meritorious defense in this case and that's been established through the pleadings.

Crehan argues that he in fact paid one dollar to Ohst and that her affidavit asserting contrary contentions does not establish a meritorious defense. This argument lacks merit. In her affidavit supporting her motion to set aside the default, Ohst made it clear that her claims rested on more than Crehan's alleged failure to tender her one dollar. Specifically, she stated that Crehan had made fraudulent misrepresentations, as well as that she had "never received valuable consideration from [Crehan] to form a valid contract," or even received the dollar that Crehan was supposed to pay her. If proven, these assertions were a meritorious defense to Crehan's contentions that he had performed his obligations under a valid contract; accordingly, Ohst established a meritorious defense for purposes of setting aside a default. See *Shawl v Spence Bros, Inc*, 280 Mich App 213, 234-235; 760 NW2d 674 (2008). Because Ohst established both good cause and a meritorious defense, the trial court did not abuse its discretion by setting aside the default under MCR 2.603(D)(1). See *Village of Edmore*, 322 Mich App at 260.

IV. MOTION FOR JNOV

Crehan also argues that the trial court erred by denying his motion for JNOV with respect to Ohst's claims. More specifically, Crehan makes a host of arguments, some of which are unpreserved or otherwise not properly before us,[10] relating to the weight and credibility of the evidence, the consistency of the jury's verdict, proof of damages, juror confusion, the parol-evidence rule, the adequacy of Ohst's pleadings, fraud premised on promises of future conduct, and his allegation that Ohst had breached the contract by failing to vacate the property in February 2018. We find no merit to any of his arguments.

We review de novo a trial court's denial of a motion for JNOV. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 752; 880 NW2d 280 (2015). "In reviewing a decision regarding a motion for JNOV, this Court must view the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party. If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Id*. (quotation marks and citation omitted). "[A] trial court should grant a party's motion for JNOV with respect to certain damages if the jury was permitted to speculate concerning the amount of those damages." *Attard v Citizens Ins Co of America*, 237 Mich App 311, 321; 602 NW2d 633 (1999). We review de novo questions of contract interpretation. *Morinelli v Provident Life & Accident Ins Co*, 242 Mich App 255, 261; 617 NW2d 777 (2000).

---

[10] Crehan's statement of questions on appeal in relation to the JNOV motion include issues involving (1) the jury's verdict on alternate counts, (2) whether the parties' written contract represented their entire agreement, and (3) whether Ohst proved damages. To the extent he addresses other issues in his arguments regarding his motion for JNOV, those issues need not be considered because they are not included in his statement of the questions presented. See *Butler v Simmons-Butler*, 308 Mich App 195, 210; 863 NW2d 677 (2014). In any event, these arguments lack merit, as we will discuss.

## A. INCONSISTENT VERDICTS

Crehan argues that he was entitled to a JNOV because fraud and breach of contract were alternative theories of liability, yet the jury found in Ohst's favor on both counts.[11] The basis for Crehan's argument based on the jury's finding of liability on both of Ohst's claims is unclear; but to the extent he argues that the verdicts were somehow inconsistent, this argument lacks merit.

A plaintiff is allowed to plead alternate theories of recovery and to have those alternate theories submitted to the jury, even when those theories are potentially inconsistent. See MCR 2.111(A); *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 328; 657 NW2d 759 (2002). In addition,

> [t]he Michigan Supreme Court has repeatedly held that the jury's verdict must be upheld, even if it is arguably inconsistent, [i]f there is an interpretation of the evidence that provides a logical explanation for the findings of the jury. [E]very attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside. [*Allard v State Farm Ins Co*, 271 Mich App 394, 407; 722 NW2d 268 (2006) (quotation marks and citations omitted) (alterations in *Allard*).]

Ohst's claims for fraud and breach of contract were not necessarily inconsistent, and the jury's verdicts were not logically inconsistent. See 27 Williston on Contracts (4th ed), § 69:56; see also *Allard*, 271 Mich App at 407. Given the evidence at trial, the jury could have concluded that Crehan made fraudulent misrepresentations to Ohst by promising to stop foreclosure, prevent the foreclosure from appearing on Ohst's credit report, and eliminate Ohst's responsibility for a possible deficiency judgment, in order to induce her to essentially give him her home. See *Dirr v Adler*, 262 Mich 688, 689; 247 NW 783 (1933) (finding evidence supported conclusion that the defendant engaged in fraud by purchasing home in danger of foreclosure with bad-faith promises to assume mortgage and pay off indebtedness). Indeed, according to Crehan's own testimony, he had no intention of stopping the foreclosure; rather, he only planned to redeem the property following the foreclosure sale, which would not have stopped the foreclosure, prevented the foreclosure from appearing on Ohst's credit report, or eliminated Ohst's responsibility for a possible deficiency judgment. See *Van Marter v American Fid Fire Ins Co*, 114 Mich App 171, 184; 318 NW2d 679 (1982) ("A claim of fraud may be predicated on a future promise if the promise is made in bad faith without present intention to perform."). Further, given Ohst's testimony about her reliance on Crehan's promises when entering into the contract to sell her house for one dollar—while at the same contracting away her rights of redemption and to possess the property during the redemption period—the jury easily could have found that Ohst reasonably relied on Crehan's promises to her detriment. See *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995).

---

[11] This issue is unpreserved. At a hearing after trial, Crehan orally expressed his "confusion" about the jury's verdict on alternate counts. But Crehan failed to timely raise this argument as a ground for relief in his motion for JNOV or a new trial. See MCR 2.610(A)(1); MCR 2.611(B). Nonetheless, in the interest of finality, we will address it.

At the same time, with regard to the breach of contract claim, the jury could have concluded, on the basis of Ohst's testimony and documentary evidence, that Crehan breached the purchase agreement by—if nothing else—failing to pay one dollar to Ohst. See *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014) ("A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach."). Again, Ohst was entitled to pursue alternate claims. And given the evidence at trial, verdicts on both alternate counts in Ohst's favor are easily reconciled. See *Allard*, 271 Mich App at 407.

Further, there was no double recovery or windfall to Ohst as a result of the jury's findings of liability. Ohst was not required to elect her remedy before trial but was entitled to pursue multiple theories, provided that she did not ultimately receive a double recovery. See *Walraven v Martin*, 123 Mich App 342, 349, 351; 333 NW2d 569 (1983). In this case, Ohst received monetary damages for her fraud claim; the trial court subsequently vacated the jury's award of attorney fees on the contract claim and denied Ohst's request to void the sale of the property, reasoning that she had been made whole by monetary damages on the fraud claim. There was clearly no double recovery. See *id*.

## B. PAROL EVIDENCE

Crehan also argues that the trial court should have granted his motion because the parties' written contract, which included a merger clause, represented the entirety of their agreement. Specifically, because the purchase agreement did not indicate that Crehan would stop foreclosure, prevent a foreclosure from appearing on Ohst's credit report, or eliminate Ohst's responsibility for a possible deficiency judgment, Crehan asserts that such alleged promises cannot give rise to a claim for breach of contract or support Ohst's claims for fraud. Further, Crehan argues that parol evidence regarding these promises should not have been admitted to alter the written terms of the parties' agreement. We disagree.

Crehan's position, taken for the first time in his motion for JNOV, directly contradicts his own arguments and evidence at trial. In particular, during his trial testimony, in addition to the purchase price set forth in the contract, Crehan specifically testified that Ohst had received consideration not stated in the written contract, namely Crehan's "promise to go ahead and redeem the property." Elaborating on his understanding of their respective contractual obligations, he testified: "We sign a contract, we both have obligations. Her obligation was to vacate the house by February 28. My obligation was to redeem the property prior to the six-month redemption[.]" He acknowledged that his promise to redeem the property was *not* set forth in the purchase agreement, but argued "a verbal [sic] promise is as valid as a written one." Indeed, during questioning by opposing counsel, he expressly *disagreed* with the assertion that the written agreement, even though it contained a merger clause, was the complete understanding of the parties' agreement. He explained his view of the relationship between the written contract and previous verbal promises as follows:

> People don't just go ahead, meet each other on the street and sign a purchase agreement. There's something that leads up to it and there's representations. I don't think there's a contract on the—that anybody signed on the face of the earth

that the parties didn't have discussions with prior to that and based on that understanding they went ahead and entered into the contract.

\* \* \*

When anybody signs any type of an agreement, there's a lot of verbiage that goes on verbally, if you will, between the parties prior to signing it.

In short, although Crehan's version of events differed from Ohst's testimony regarding the content of the oral promises that were made, Crehan unequivocally took the position that there were binding oral promises that were not set forth in the written agreement.[12] Having taken the position, and offered evidence during trial that the written contract was *not* the parties' complete understanding, Crehan waived any argument to the contrary, and he cannot obtain relief from the jury's verdict on the basis of an error to which he contributed. See *Bates Assoc, LLC v 132 Assoc, LLC*, 290 Mich App 52, 63-64; 799 NW2d 177 (2010) ("A party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute.").

## C. WEIGHT OF THE EVIDENCE

Crehan also argues that the trial court's denial of his motion was against the great weight of the evidence. We disagree. In making this argument, Crehan focuses solely on the evidence favorable to his position, and he asks this Court to draw inferences in his favor. But when viewing the evidence in a light most favorable to Ohst and drawing reasonable inferences in her favor, as we must, see *Dell*, 312 Mich App at 752, we conclude that there was considerable evidence that Crehan made bad-faith promises, including promises to stop foreclosure, to prevent a foreclosure from appearing on Ohst's credit report, and to eliminate Ohst's responsibility for a possible deficiency judgment. It is true that Crehan offered a different version of events in which his promises were more qualified. That is, according to Crehan, he promised to stop the foreclosure process by redeeming the property after the foreclosure on the mortgage had already taken place and he promised to prevent a "non-redeemed foreclosure" from appearing on Ohst's credit report. But the issue of his credibility versus Ohst's credibility was for the jury to decide. See *Taylor v Mobley*, 279 Mich App 309, 314 & n 5; 760 NW2d 234 (2008). The jury was not required to believe Crehan's testimony.[13] See *id*.

---

[12] Crehan's concession that there promises outside the written agreement is not surprising, given that, on the face of the purchase agreement, the only consideration for the contract was one dollar. Although courts generally will not evaluate the adequacy of consideration, on the facts of this case, the one dollar purchase price in exchange for the house and the rights lost by Ohst could readily be considered so grossly inadequate as to shock the conscience, see *Rose v Lurvey*, 40 Mich App 230, 233-234; 198 NW2d 839 (1972), particularly when considering the other evidence of bad faith and fraud in this case, see *Wroblewski v Wroblewski*, 329 Mich 61, 67; 44 NW2d 869 (1950).

[13] Moreover, the credibility of Crehan's version of events was suspect because the promises that Crehan claims he made to Ohst were, at best, illusory. Michigan's statutory scheme provides for

-10-

Moreover, although not itself a contract, Crehan's letter to Ohst—which used unqualified phrases such as "stop foreclosure," "prevent a foreclosure from appearing on your credit report," and "eliminate your responsibility for possibly paying a deficiency judgment to the lender"— supported Ohst's version of events with respect to what Crehan claimed he could, and would, do for Ohst. On the whole, given the evidence presented and drawing all reasonable inferences in Ohst's favor, reasonable jurors could have easily decided in Ohst's favor. See *Dell*, 312 Mich App at 752.

Crehan also argues that Ohst was not entitled to relief because she breached the contract by failing to vacate the property. This argument lacks merit because, having first substantially breached the contract by failing to perform *any* of his obligations, including his obligation to pay Ohst, Crehan cannot claim that Ohst breached the contract by failing to timely vacate the property. See *Able Demolition v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007).[14] There is no basis to set aside the jury's verdict as being against the weight of the evidence. See *Dell*, 312 Mich App at 752.

## D. JUROR CONFUSION

Crehan also argues that the jury misunderstood his business model and the significance of evidence he presented concerning other foreclosure properties he had purchased. We disagree. In support of this assertion, he presents his own affidavit in which he states that, after trial, he spoke

---

foreclosure by advertisement on a "mortgage of real estate." MCL 600.3201. The foreclosure on the mortgage is accomplished by the sale; that is, "the mortgage is extinguished at the time of the foreclosure sale." *Bank of Three Oaks v Lakefront Props*, 178 Mich App 551, 555; 444 NW2d 217 (1989). And it is the purchase price at the sheriff's sale as compared to the mortgagor's debt that determines the potential deficiency judgment. See generally MCL 600.3280. Redemption after the sale does nothing to stop the foreclosure on the already-extinguished mortgage. Further, Crehan presented no factual evidence or supporting legal authority for the proposition that redemption following foreclosure improves one's credit score or that credit reports in any way distinguish between a foreclosure and a "non-redeemed foreclosure." Indeed, the undisputed fact in this case is that Ohst has a foreclosure on her credit report. Crehan's alleged promise to redeem the property *for himself* following the foreclosure sale offered no benefit whatsoever to Ohst, while at the same time, Crehan sought to deprive Ohst of her rights to redeem and occupy the house during the redemption period. Given the illusory nature of Crehan's purported promises and what Ohst contracted away, a reasonable jury could easily find more merit to Ohst's explanation of what Crehan offered as consideration in exchange for her house.

[14] Crehan argued that he performed his obligations by eventually redeeming the property, after trial. Such an argument is based on his own version of what he promised Ohst, which does not involve viewing the evidence in the light most favorable to Ohst as required when reviewing a motion for JNOV. See *Dell*, 312 Mich App at 752. As discussed, viewed in a light most favorable to Ohst, the evidence established that Crehan promised to stop foreclosure, prevent a foreclosure from appearing on her credit report, and eliminate her responsibility for a possible deficiency judgment. Such promises, particularly promises to stop foreclosure and prevent a foreclosure from appearing on Ohst's credit report, required action *before* the foreclosure sale on January 26, 2018.

to two jurors who informed him that they misunderstood the evidence. Affidavits attempting to undermine the jury's verdict, particularly affidavits such as Crehan's that are founded on hearsay, are not a proper basis for setting aside a jury verdict. See *Beaubien v Detroit United Ry*, 216 Mich 391, 397-398; 185 NW 855 (1921); *Shiner v Detroit*, 150 Mich App 420, 424-425; 387 NW2d 872 (1986). In any event, we note that the evidence that Crehan claims caused juror confusion was introduced *by Crehan*. If this evidence somehow confused matters, it was Crehan's own doing in his presentation of the evidence. He is not entitled to relief on the basis of his own errors. See *Bates Assoc, LLC*, 290 Mich App at 63-64.

## E. FRAUD INVOLVING FUTURE CONDUCT

Crehan also argues that he was entitled to JNOV because a claim of fraud may not be predicated on promises for future conduct. We disagree. A fraud claim must generally relate to past or existing facts, not future events. *Foreman v Foreman*, 266 Mich App 132, 143; 701 NW2d 167 (2005). "However, an unfulfilled promise to perform in the future is actionable when there is evidence that it was made with a present undisclosed intent not to perform." *Id*. See also *Van Marter*, 114 Mich App at 184. Ohst's fraud claim involved Crehan's unfulfilled promises to perform in the future, made without any intent to perform, and as such constituted a valid claim of fraud. See *Dirr*, 262 Mich at 689 (finding evidence supported conclusion that the defendant engaged in fraud by purchasing home in danger of foreclosure with bad-faith promises to assume mortgage and pay off indebtedness).

## F. FAILURE TO PLEAD WITH PARTICULARITY

Crehan also appears to argue that he was entitled to JNOV because Ohst failed to plead fraud with particularity. His argument is moot. At this point, the question before us on appeal involves review of a denial of a postjudgment motion for JNOV.[15] Ohst's claim of fraud was actually litigated during trial with the consent of both parties. See *Zdrojewski v Murphy*, 254 Mich App 50, 61; 657 NW2d 721 (2002) (concluding that failure to object to evidence supporting claim constituted implied consent to try the issue). JNOV on the basis of an alleged pleading defect is not appropriate in these circumstances. See *Symons v Prodinger*, 484 Mich 851 (2009) (concluding that JNOV on issue litigated during trial was not appropriate for failure to plead a cause of action because "under MCR 2.118(C)(1), issues that are tried by express or implied consent of the parties, even though they are not raised in the pleadings, are treated as if they had been raised by the pleadings").

## G. DAMAGES

Crehan also argues that the trial court erred by denying JNOV because Ohst failed to prove actual damages or to establish any out-of-pocket losses. We disagree. "A plaintiff asserting a cause of action has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable." *Health Call of Detroit v Atrium*

---

[15] The trial court denied Crehan's pretrial motion for summary disposition under MCR 2.116(C)(8) that was premised on Ohst's alleged failure to plead fraud with particularity; Crehan has not appealed that denial.

*Home & Health Care Servs, Inc*, 268 Mich App 83, 96; 706 NW2d 843 (2005). "In a fraud and misrepresentation action, the tortfeasor is liable for injuries resulting from his wrongful act, whether foreseeable or not, provided that the damages are the legal and natural consequences of the wrongful act and might reasonably have been anticipated." *Barclae v Zarb*, 300 Mich App 455, 479; 834 NW2d 100 (2013) (quotation marks and citation omitted). Fraud damages are *not* limited to actual out-of-pocket losses, but are instead designed to provide the deceived party the "full benefit of the bargain," i.e., "difference between the value of what he would have obtained had the statements been true and the value of what he actually received."[16] *Chapman v Bible*, 171 Mich 663, 667; 137 NW 533 (1912) (quotation marks and citation omitted). See also 37 Am Jur 2d, Fraud and Deceit, § 376 ("The benefit-of-the-bargain rule, as a measure of damages for fraud, is a punitive measure which compels a party guilty of fraud to make good his or her representations, and under its operation, the parties are placed in the same position as if the representations had been fully performed.").

In this case, had Crehan performed his false promises to Ohst, he would have prevented a foreclosure from appearing on Ohst's credit report, and eliminated Ohst's responsibility for possibly paying a deficiency judgment to her mortgage lender. In other words, the benefit of the bargain would have allowed Ohst to walk away from the house free and clear, without even the *possibility* of a deficiency judgment. However, Crehan did not fulfill his false promises. As it stands, Crehan has done nothing to prevent a possible deficiency judgment, and Ohst still owes Huntington Bank $23,752.94. On these facts, the jury's award of 23,752.94 in damages—representing the remaining amount owed on Ohst's note—was not speculative. To the contrary, the damages were reasonably calculated to afford Ohst the benefit of her bargain by providing her the means to eliminate her responsibility for a possible deficiency judgment.

Crehan argues that Ohst will not have been damaged unless a deficiency judgment actually enters against her at some future time. His argument is flawed insofar as he focuses on out-of-pocket, rather than benefit-of-the-bargain, damages. Moreover, his argument fundamentally ignores the nature of the bargain in this case and the damages Ohst suffered because of Crehan's failure to fulfil his promises. That is, Crehan did not promise to pay a deficiency judgment in the event that the lender actually pursued a judgment against Ohst. Instead, he promised—falsely and in bad faith—to eliminate her responsibility for *possibly* paying a deficiency judgment, which could only have been accomplished by satisfying her debt in full. By ordering Crehan to compensate Ohst with the means to satisfy her debt in full, the jury afforded Ohst the benefit of her bargain to which she was entitled as a result of Crehan's fraud. See *Chapman*, 171 Mich at 667; 37 Am Jur 2d, Fraud and Deceit, § 376. The damages were not speculative, and Crehan was not entitled to JNOV.

---

[16] For an overview of the differences between out-of-pocket and benefit-of-the-bargain damages compare 37 Am Jur 2d, Fraud and Deceit, § 376 (benefit of the bargain), with 37 Am Jur 2d, Fraud and Deceit, § 378 (out of pocket). See also 3 Restatement Torts, 2d, § 549, Reporter's Note.

## V. MOTION FOR A NEW TRIAL

Crehan also argues that the trial court erred by denying his motion for a new trial related to his claim for tortious interference against Coastline. Specifically, Crehan argues that a new trial is warranted because the jury's verdict was against the great weight of the evidence, witnesses engaged in "character assassination" against him, counsel for Coastline and Ohst made improper arguments, and the trial court denied his request for time to review juror questionnaires.[17] We disagree. We review for an abuse of discretion a trial court's decision whether to grant a new trial. *Shivers v Schmiege*, 285 Mich App 636, 642; 776 NW2d 669 (2009). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Id*. (quotation marks and citation omitted).

### A. WEIGHT OF THE EVIDENCE

Crehan argues that the jury verdict of no cause of action regarding his tortious interference claim against Coastline was against the great weight of the evidence. We disagree. Under MCR 2.611(A)(1)(e), a new trial may be granted when the verdict is against the great weight of the evidence. "[T]he trial court's function is to determine whether the overwhelming weight of the evidence favors the losing party," and this Court gives "substantial deference to the trial court's conclusion that a verdict was not against the great weight of the evidence." *Guerrero v Smith*, 280 Mich App 647, 666; 761 NW2d 723 (2008) (quotation marks and citations omitted).

> The elements of tortious interference with a business relationship or expectancy are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff. [*Cedroni Assn, Inc v Tomblinson, Harburn Assoc, Architects & Planners Inc*, 492 Mich 40, 45; 821 NW2d 1 (2012) (quotation marks and citations omitted).]

In this case, Crehan argues that his claim against Coastline was conclusively established because Coastline interfered with his business relationship with Ohst (1) by filing a district court action—against Ohst, Crehan, and Ohst's ex-husband—for possession of the property and (2) aiding Ohst in her lawsuit against Crehan. However, with regard to Coastline's suit in district court, Crehan's claim fails because "[t]here is nothing illegal, unethical or fraudulent in filing a lawsuit, whether groundless or not." *Dalley v Dykema Gossett*, 287 Mich App 296, 324; 788 NW2d 679 (2010) (quotation marks and citations omitted). Coastline, as the purchaser of property at a foreclosure auction, had the right to seek possession of that property, and Ohst's name was still on the deed despite her signing a quitclaim deed for Crehan. With regard to Coastline's assistance to Ohst, McNeil testified that he provided Ohst with $2,000 toward her legal fees (far less than the full amount) because he wanted to help her right the wrong that had been done to her by Crehan. Again, there is nothing wrongful about pursuing a lawsuit. See *id*. And, in any event,

---

[17] Again, many of Crehan's arguments regarding his motion for a new trial are not included in his statement of the questions presented. See *Butler*, 308 Mich App at 210. In the interest of finality we consider them and conclude they lack merit.

Crehan failed to establish that Coastline acted with an improper motive to induce or otherwise cause the termination of Ohst's relationship with Crehan when the undisputed evidence—from both Ohst and McNeil—was that Ohst met with an attorney and made the decision to file her lawsuit against Crehan without any input from Coastline and before McNeil provided her money toward her legal fees. See *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 79; 919 NW2d 439 (2018). The great weight of the evidence did not support Crehan's tortious-interference claim and the trial court did not abuse its discretion by denying Crehan's motion for a new trial. See *Guerrero*, 280 Mich App at 666.

## B. WITNESS COMMENTS

Next, Crehan contends that a new trial is warranted because, during their respective testimony, Benedict referred to Crehan as a "predator," and McNeil alluded to Crehan's "very less than stellar reputation." We disagree. Crehan characterizes the comments as "character assassination," and he faults the trial court for failing to give a curative instruction following these comments. However, the record shows that Crehan failed to object to McNeil's remark, and this fleeting, isolated, and rather vague remark did not affect Crehan's substantial rights and it does not warrant relief on appeal. See MCR 2.613(A); *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 700; 630 NW2d 356 (2001). With regard to Benedict's comment, this was a nonresponsive answer by a lay witness to a question posed by Crehan, not testimony elicited by opposing counsel. See *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990) (acknowledging general rule that, absent conspiracy or encouragement to give improper testimony, a nonresponsive answer is not grounds for relief). Crehan objected, and the trial court sustained the objection and instructed Benedict to answer the question. However, after obtaining a ruling in his favor, Crehan failed to request a curative instruction, and cannot now claim on appeal that the trial court erred by failing to give such an instruction. See *Wilson v Stilwill*, 92 Mich App 227, 229; 284 NW2d 773 (1979), aff'd 411 Mich 587 (1981). Moreover, Crehan was the only party who made any of mention of this testimony to the jury during closing. Considering the record as a whole, Crehan was not denied a fair trial by these brief remarks, and the trial court did not abuse its discretion by denying his motion for a new trial.

## C. COMMENTS BY COUNSEL

Crehan also argues that counsel for Ohst and Coastline made a variety of improper comments during their closing statements. Again, Crehan failed to make any objection to the challenged remarks during trial, and he has not shown that the challenged remarks were so prejudicial as to deny him a fair trial or that the remarks could not have been cured by a jury instruction. See *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 100-101; 330 NW2d 638 (1982); *Badiee v Brighton Area Sch*, 265 Mich App 343, 373-374; 695 NW2d 521 (2005).

## D. JUROR QUESTIONNAIRES

Crehan lastly argues that the trial court erred by denying his request, made just before closing arguments, to review the juror questionnaires that were completed by potential jurors before they were selected for a jury pool. We disagree. "A trial court has wide, but not unlimited, discretion and power in the matter of trial conduct." *People v Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995). Following the close of proofs, when the trial court was ready for the parties

to begin closing arguments, Crehan asked for time to review the juror questionnaires because he thought it might be helpful for his closing arguments if he knew about the jurors' backgrounds, including things like whether somebody was a plumber or a housekeeper. Ohst's attorney opposed the request, and the trial court declined to delay the trial, stating:

> The matter of the employment or any of the inquiries with regard to the jurors, those juror questionnaires have been available for quite some time. But more importantly, there was a voir dire that was an opportunity to inquire of the jurors of those things and I gave everybody an open-ended opportunity to voir dire and that included Mr. Crehan, so we're not going to delay this. We're going to move forward.

> So, we'll have the jury come in. You make your closing statements and then we'll give the instructions.

The trial court's decision is within the range of reasonable and principled outcomes. Under the court rules, the juror questionnaires were available for review even before jury selection. See MCR 2.510(C)(2). As noted by the trial court, Crehan had also had the opportunity to question jurors during voir dire. In these circumstances, the trial court did not abuse its discretion by denying Crehan's eleventh-hour request for extra time to review the jury questionnaires to ascertain the jurors' occupations. Moreover, Crehan fails to explain how the denial of his request affected the outcome of the proceedings against him, and is not entitled to relief on appeal. See MCR 2.613(A); *Ellison v Dep't of State*, 320 Mich App 169, 179; 906 NW2d 221 (2017).

Affirmed. As the prevailing parties, appellees may tax costs. MCR 7.219(A)(1).

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Deborah A. Servitto